Lall v. Department of Homeland Security. Counsel, you may proceed. May it please the Court, my name is Robert Day, Pro Bono Counsel. On behalf of Petitioner Appellant Gary Lall, I'd like to reserve two minutes for rebuttal. In Frederick v. Commissioner of Internal Revenue, that's 126F3433, this Court explained that when an equitable estoppel claim is being lodged against the government, there's a balancing test at issue. On the one hand, there's the public interest in ensuring that the government can enforce the law without fearing estoppel. On the other hand, there's the citizens' interest in some minimum standard of decency, honor, reliability, and the relationships with their government. Okay. Now, yeah, we have your brief and we understand a lot of your argument here. But let me begin by asking, and your opening helps tee this up, are you acknowledging that under the statutes, you would lose? You just, you can't qualify under 320 or 321 or 322, any of those statutory sections under the INA. Your only route forward is an equitable estoppel route. That's correct, yes. I would say under the statutes in 1991 as written, he applied under Form 6 and 600, seeking derivative status. The entire basis of equitable estoppel and its application in this Court, by this Court's president, Second Circuit, Fifth and Ninth, and honestly, any time I see the Fifth and Ninth agreeing on an immigration issue, it feels like I'm on to something, is that a technical application of the statute can work grave injustices to well-meaning immigrants. And here, there's no question that my client truthfully applied for derivative citizenship in 1991. That citizenship, he came, he was invited by the INS to come in, take an oath of allegiance, and receive a certificate of citizenship that at that point said with no certain terms that he was a citizen of this country and had become so. Did he take the oath? He did, yes. I was under the impression that maybe he did take, but he did take the oath. That's correct, and he attached it to his complaint. But he took the oath after he was age 18, so even under the statutes as applicable at that time, he could not, the government did not have the authority to provide him citizenship. That's correct. At the time that he applied, he did not meet the technical requirements of this statute. And that remains the case. That remains the case, yes. So your argument rests in equity. It strikes me that we've got a few bounds to equity. One, courts can't equitably confer citizenship. There's no dispute on that, right? Well, I mean, so I guess we could start with Pangolinan, is that what you're saying? Yeah, I mean, that's where I take the whole thing. That's something for the executive, but that's not for courts. We might be able to regulate agencies that confer citizenship, but we cannot do it ourselves. So equitably, a conferral of citizenship has just got to be off the table, right? I disagree with that, Your Honor. Pangolinan says that as a principle of law, that equity can't confer citizenship. But Pangolinan cites a case by the Supreme Court, INS v. Hibbe, that's 414 U.S. 5, involving the same basic facts. In Pangolinan and Hibbe, what was at the view was Filipino veterans who helped our troops during World War II had an expedited basis for citizenship. You're aware of the case. And these were individuals who came decades later who didn't even apply for that exemption or that expedited process. And in INS v. Hibbe and Pangolinan, both cases, the court is dealing with the question of equity. In INS v. Hibbe, the court sets forth the equitable estoppel test, all four prompts. It doesn't set that standard forth just to say it doesn't apply, period, it's irrelevant, but to say that in that specific case, the invocation of equitable estoppel didn't occur. Mr. Day, that's interesting. But how does it get you past the specific language the Supreme Court used? The power to make someone a citizen of the United States has not been conferred upon the federal courts like mandamus or injunction as one of their generally applicable equitable powers. Right. Sounds like we don't have the power. I don't think, I could be surprised, maybe Mr. Buchanan is going to stand up here on behalf of the government and say we're proud of the way we did things here. But I kind of doubt it because the facts here make the government look terrible, really bad, really genuinely terrible. But is it a problem we can fix? You're saying yes, but you've got to get past this. Pangolin seems to say the power to confer citizenship does not lie with the federal courts, it lies with the executive branch. Other than reaching to an earlier case, which obviously cannot change what Pangolin had said, how do we get past that language? Just to respond to the specific point you just made, is that Pangolin cites INS v. Hibby favorably, so it does not view itself as conflicting with INS v. Hibby in the test it sets. I think it's very important, the question specifically before the court in Pangolin was whether these folks who didn't even apply for the program that was set forth and had sunsetted decades earlier should be nevertheless granted citizenship, regardless of the fact that they had simply not applied. What this court said, for example, in Delmore, what the Ninth Circuit has said in Friend v. Reno and Leehan Lung v. Dulles and what the Supreme Court says in Schneiderman, is that when the government tells someone and bestows upon that person citizenship and tells them you are a citizen, that inheres a very important precious right to that person and understanding to that person that he may rely on. And therefore, even though the government in all these cases that I cite takes the position that, oh, actually this man doesn't actually apply, doesn't actually survive scrutiny under the technical application of the law. And this is not just in citizenship context, this is in the LPR context, this is in religious worker exemptions. All of these cases, when an equitable estoppel comes in, what the courts are trying to balance is exactly the value you're talking about with an equitable principle of estoppel. All those cases that you're talking about, well, can you cite us to a single citizenship case? You've cited LPR cases and others where there can be maybe some wiggle room for us. Other perhaps than the district court case in Harriet, can you take us someplace where a court has said, and preferably the Supreme Court or a court of appeals, not that the district courts just don't get into this that much, has said what you're urging on us now. Actually, let me take a step back and ask you a question before that. What exactly are you asking us to do? What is the exact equitable relief you're asking the court to provide? I'm asking this court two things. One is a reversal of the removal order that has now banished my client from the country, now he's in Guyana away from his family. And I'm also asking for a reversal of the motion to dismiss that was decided on the pleadings that was, in my view, a pro se plea. On what basis are you saying equitable estoppel? Like what's the end game? Do you think we can say, and are you asking us to say, in effect, give Mr. Lowell citizenship? Is that the thing you're asking us to do? Yeah, I think, I mean, so we're on a review from a motion to dismiss on the pleadings, right? So in my view, at the very least, he's entitled to the procedural due process protections that adhere when someone is told they are a citizen, whether in the case of Delmore, it was a letter from a commissioner of immigration, or in the case of Lee Han Long, it was a letter from the Special Inquiry Board decision. So he's entitled, he's certainly entitled to bring, to the due process protections that are provided there and to make his case for citizenship. Ultimately, I think, yeah. That feels like you're getting the cart before the horse because that assumes he's a citizen, right? That's what we're arguing about. Is he a citizen or isn't he a citizen? It seems to be, since you've acknowledged as a statutory matter, he's not entitled to citizenship. The question we're wrestling with is, is he, you know, is the relief you're asking for or the question I'm wrestling with is, is the relief you're asking for the equivalent of us declaring he's a citizen? So the short answer is, I'm trying to just be as thoughtful as I can about the answer. It's an important question. The short answer is yes. The point is that when the government tells someone they are a citizen unequivocally, the government has to, the only way it can cancel that, it can sort of take that back, is by putting on its proof. And I do think that both procedural due process and equitable estoppel provide that, all we're asking for here is to take the government at its word. So yes. When we think about equitable estoppel, I think you referenced earlier this got four prongs, four elements. One of them, I think, I'll just forecast for you. I'd like to address at some point in time the affirmative misrepresentation point or the affirmative misconduct point, because that's a doozy for you, I think. I'll just forecast that. But for now, just to tease on the equities a little on this specific case, how much did your client really rely on that? Because it appears that after he received the certificate of citizenship, he then applied for a green card. He applied for a passport and didn't get it. It strikes me as a little weird for a person to say, oh, I totally believed that I was a citizen. I still went ahead and applied for a green card. That just suggests to me right out of the gate, circa 1991, that your client put no stock in this certificate of citizenship. Maybe he knew that the dates were wrong. Maybe he knew that he was over 18. Maybe he knew that his adoptive parents were naturalized in the 70s, not 1990s. But for whatever reason, how can you say that there's reasonable reliance when this person who's supposed to be a citizen then turns around and applies for a green card? Citizens typically don't do that. Yeah. So the answer to that, I mean, the first answer to that is that the application you're referencing was not before the district court. Okay. So the inferences you're making right now, Your Honor, are inferences that should have been made or are inferences that were not made by the district court, nor are they sort of proper for this court to reach because they're based on a record that wasn't before the district court. So stage of pleading is concerned. Right. So you might say, that could be a huge problem for us, but not today. That's correct. And that's the most important point to start. The second point is, I mean, I think that that application, I mean, and I can tell you, again, I don't want to engage in a fact-finding mission here, right? But my client has told me exactly what happened there, was that he did apply for a passport. It was denied inexplicably, but he did not receive the letter that the government attached to their appellee brief for the first time on appeal. He didn't know. So he went to the agent who had just conferred a certificate of citizenship to him and just said, hey, I've got travel plans. My passport was denied. He's an 18-year-old kid. And she didn't explain to him what he was doing, right? She just filled out the application. And actually, if you look at it closely, again, I don't want to get too much into the weeds of the facts, but the signature line, the application itself was filled out by her in her penmanship. And from his telling, essentially, he received it. He was able to travel. Didn't think much of it again. And, again, at this point, the question from an equitable estoppel point is who has the duty, right? Does my 18-year-old client who just had a passport application denied have the duty to consider citizenship, you know, to make the inference there? The duty question is ultimately going to be tethered. I mean, sooner or later, you have to confront the fact that in order to have equitable estoppel, even if you run the first three elements, you've got to show some degree of affirmative misconduct. We've got a moderate case that basically says delay is not affirmative enough to be misconduct or it's not affirmative. I don't know if the emphasis is on affirmative or misconduct, but it's not. And so what affirmative misconduct do we have by the government in this case? Let's say you run the traps at this stage of the proceeding. You get one through three. I'm not seeing anything you have for four. So I want to fold in Judge Jordan's question about citizenship claims, okay? And I see I'm out of time, but I assume I can answer both questions. Okay. What all of the cases that the government cites in favor of its principles here and articulates, you know, what you've just said, is that in all of those cases, what you had was an individual who either failed to fulfill an application, did not complete either he himself or she herself did not complete the application process, the government did not actually complete its evaluation, or the government explicitly denied the application. And in each of those cases, the only thing that the person could put their hat on was a mere delay on the part of the government officials who either processed the, you know, application. And in some cases, I mean, frankly, many of those cases, I'm not surprised that the court would rely, you know, reach the conclusion it did because they don't even sound like equitable estoppel arguments. Your specific question is what's the affirmative misconduct here? What we have here is a government, an INS official, a series of INS officials, who pursuant to a statute issued a certificate of citizenship that stated to my client in no uncertain terms, unconditional terms, that he was indeed a citizen of this country and he had proven it, then knew, and this was attached again to the pleading, which in my mind explicitly, you know, shows that it's a well-pled estoppel claim. We have an interagency memo just months later from the INS saying, oh, yeah, we made a mistake on that guy's application, right, that should have been corrected and we're in the process of correcting it. Then inexplicably, it's not contested on appeal, it wasn't contested, obviously, before the district court, waited 21 years for my client to actually, to tell my client that he was no longer a citizen. And that, so it's not just a delay, it's the affirmative statutory statement. I'm sorry. No, I mean, the question is this, is it feels like the real grievance is the delay, and I'm not sure that you can say that inaction is affirmative misconduct. I think you can say, look, it might be passive misconduct, you might be able to get that far. Right. But just never, ever reaching out to somebody. You know, we've got to give life to the word affirmative, and so the question is, okay, so what exactly did you do wrong, and the answer is it was your inaction that broke me. I disagree. Okay. And what I'm saying is it's both. I mean, we have a statute, this Congress has empowered the agency, the INS, the Attorney General, at 1991 to issue, pursuant to statutory authority, certificates of citizenship, okay, and has told this person, in error, he did not make any mistakes. This is unlike any of the other cases. That's problem one, that's misrepresentation. Misrepresentation, right. I'm talking problem four. And then knowingly, the knowing failure to take action with this man's citizenship rights. I think he has an absolute right to rely on this government's affirmative representation about his citizenship. So you would have us interpret the 21-year delay as affirmative misconduct because it knew there was a problem, and it knew that his opportunities to rectify it might expire. It's that plus the fact that the government has said, told this person, you are a citizen, and that matters to this court, to the Ninth Circuit, and to others. When you say the government told you that, again, that's conflating prong one and prong four, which might be a little bit of a problem. Do we ever get to the four prongs of equitable estoppel if we have no equitable power, or is that the end of it? So, yeah, I mean, I think that's getting back to your initial question about where the citizenship case is, right. So multiple responses to that, and I know I'm out of time, but this is, you know, you can tell me when to leave. Citizenship cases. INS v. Hibby is a citizenship case. INS v. Hibby is a Supreme Court case where they set forth the affirmative misconduct standard, and it's a citizenship case, and it's a Supreme Court case. And I would point this court also to Cornel Rodriguez. Do the statutes change after Hibby? The statutes certainly changed. The government says, look, it's questionable whether the federal courts ever had this power, but assuming they had the power at one point, now you're flying in the face of a couple of statutes, 1503A, 1421A, and in the face of those statutes where the court says that, if I've got this right, 1503 says there's no, let's see, a suit for declaration of citizenship is not cognizable in the courts if the issue arose by reason of or in connection with a removal proceeding or is an issue in any such removal proceeding, which this would be, right? No, no, Your Honor. No. This didn't arise. Correct. Your suit in the district court didn't come up in the context of. It was, I mean, there's an immigration thing and there's a district court thing. Correct. But you're just saying those two things are completely unrelated. The district court has got nothing to do with the removal. No, I wouldn't, well, I wouldn't say that. If you look at the text of 1503, right, 1503 says it declines. I'll write it to you. Yeah, right. So in both of those cases, the question is, does it arise out of an immigration proceeding? And we know for a fact it did. No, it doesn't say that. It says arose by reason of or in connection with any removal proceeding. That's broader than, and then it's the second one that is, is an issue in a removal proceeding. So it looks like the court, like the Congress went out of its way to say it could come up within a removal proceeding, which the district court action wasn't. So that's to the side. But can you say that it's not in connection with or that it didn't arise by reason of this threat of removal? I can, because the District Declaratory Judgment Act preceded any removal proceedings by a year, right? So what happened was he had his certificate of citizenship canceled, and he immediately took the necessary action under the Declaratory Judgment Act to have his citizenship claim heard. And then only a year after did the government seek to remove him. And this was all in the context of his facing criminal problems, right? No, I mean, at that point he had been incarcerated. He had been incarcerated for some time. Right, right. But once he got the notice, hey, your citizenship is canceled, I guess the position you have to take is, he didn't immediately begin to take action. As soon as he got that notice, not because of a deep love for America and his citizenship, but because he understood, wait a second, now I'm a convicted drug dealer. Without citizenship, I will face removal. So a couple of responses, right? One is that there's no record evidence of that intent, as you know. The second would be that all he was doing at that point was exhausting his administrative remedies to challenge the certificate. So at that point, it was only until he got a final judgment from the AAO on appeal on the certificate of citizenship that he then exhausted his administrative remedies to try to challenge the certificate of citizenship. And then he filed his declaratory judgment action. And then the government came in with its removal proceeding. Can I just tease out, like, you know, you want equitable relief, right? Like you're not getting relief at law, right? Like it just feels like all those just aren't happening. And so that means that we have to apply basic principles of equity. And when I think of equity, I think of we're doing a very careful case-by-case determination. And there are certain equitable maxims that just govern, right? One equitable maxim is we don't lift a hand of equity when there's an adequate remedy at law. You come and say, hey, I don't have one. So you might be in a little space to have currency and equity. But another huge equitable point is that equity does not lift its hand in aid of the wrongdoer. And so your client comes after serious drug convictions and wants equity to lift its hand and say, no, sorry. We'll reset you to a point before any of those. It strikes me that we can't throw out, just as we can't throw out the equity operates when there's an adequate remedy, when there's no adequate remedy at law, we can't throw out the similar equitable maxim that equity, a court in equity does not lift its hand to help a wrongdoer. And your client right now, albeit 21 years later, comes as a wrongdoer, not an 18-year-old. Doesn't that basically, you can tell us the scope of Pan-Gillen. You can tell us the scope of everything else like this. But whatever might be left, aren't you out of rope from what equity can reward you with, your client with? So my answer is obviously no. I mean, when we're talking about what citizenship conveys and the wrongness of what the government did, there was at least 15 years, for example, where my client was not a convicted felon who had lived and breathed and had a wife and two kids who believed he was a citizen of this country reasonably because the government hadn't taken its statutory authorized and mandated steps to cancel what it had said in that certificate of citizenship. So at best, he might have had an equitable play then. But we're 21 years, and he comes as a wrongdoer. I'm not talking about the time period before he was a wrongdoer. Once he's a wrongdoer, I don't know how equity lifts it. It's a principle. Equity does not lift its hand in aid of a wrongdoer. Your client comes as a wrongdoer seeking equitable relief. Why should equity lift its hand? Because the wrong – so in that context, I'm not, you know, well-versed in the principle, but what it seems to me is that that principle applies within the exchange itself. So a wrongdoer who is – the wrongdoer – so the associated wronging – sorry – the wrongdoing by that individual, right, has to be tied to the relief they're seeking. Here, this individual honestly and fairly applied for citizenship, okay? He – So what you're saying is never mind that he's a drug dealer, and it's his own actions that prevent him now from doing what – from naturalizing as he could have if he hadn't become a drug dealer. Pay attention to what happened when the government fouled things up and then hid the ball for many years. That's your pitch, right? I think – I mean, so he certainly could have applied for naturalized citizenship before he was convicted. He's in a much harder position to make that claim as a convicted drug dealer. So I take your position to be don't pay attention to that. Pay attention to what the problem that the government gave – the government created by giving him a certificate of citizenship and never telling him it shouldn't have until after he was a convicted felon. That's your argument, right? Sure. I mean, so in part – I mean, the question is where does the duty lie? Does the government get to simply for 21 years ignore its statutory – knowingly ignore its statutory directive to – and this is based in case law – when the statute says you have the authority to cancel a certificate. Yeah, nobody's going to – I'll repeat. I could be surprised. We're going to hear from Mr. Buchanan here in just a moment. He could get up here and say, we did a beautiful job with this. I'm very proud of how things went. I don't think that's going to happen. That's not where the questions are coming from, as you've noted. Right. So we've got your argument, I think. Do you have any questions? Okay, we'll have you back. Would you like – sorry, I'm sorry. Just to answer your – I didn't answer your question about other cases that involved citizenship. I could note them quickly or I could buzz off. Do you have something other than Harriet? Yes, yes. You have a – you've got a court of appeals case that said, hey, we've got the power to grant you citizenship after Pangolin. Yeah, so I would point – there are earlier cases. Pangolinan. Yeah, there's Padilla case, and Padilla is 179 F2nd 309, and Moser v. United States 341 U.S. 41 would be two cases that I would point to. Okay. Thank you, Mr. Day. We'll have you back. We're going to hear from Mr. Buchanan for the United States. May it please the Court. Christopher Buchanan for the appellate respondents, United States Immigration and Customs Enforcement Agency and Attorney General Merrick Garland. With opposing counsel's concession that as a matter of law his client never was a citizen, that simplifies vastly the adjudication of this case because what remains only is equitable estoppel, and there's two reasons under which he cannot obtain equitable estoppel from this court. The first of those is that Pangolinan – I think that's how you say it – precludes that expressly. The court, to address a remedy in law, or to address a failure of the law to remedy a violation, that Pangolinan – Take on his assertion, Mr. Day's assertion that, hey, they, Pangolinan, favorably cited the Hibby case, and that seems to indicate that the courts do have that power. So what's your take on that? I disagree, Your Honor. Pangolinan was passed in 1988 at a time when the courts had the authority to confer citizenship, and the scope of that power has been vastly narrowed by legislative statute. So – But wait a second. It feels to me like you just shifted gears because I thought I heard you say a minute ago that Pangolinan – boy, holy smokes, I have a tough word to say – precluded this in plain terms. Yes. And now you seem to be saying that the law has changed since 1988, and that's what makes the difference. Does that 1988 Supreme Court case that some people call Pangolinan, is that the case that lays the marker down here and ends discussion, or is there something different that happens later that makes it impossible for Mr. Day's client to get the relief he's seeking? Both are true. Pangolinan draws a line in the sand that is a restriction on the court's inherent equitable authority. And the reasoning in Pangolinan is bolstered by statutory developments subsequent. So to your point, asking about case law that supports exercise of equitable estoppel to confer citizenship after Pangolinan, I am not aware of such a case. What I see is that Pangolinan drew the line in the sand in 1988, and then the circuit courts thereafter have consistently applied Pangolinan to explicitly refuse to confer citizenship. So what you're saying is that Pangolinan really focused on inherent equitable authority. Congress could pass a law tomorrow that says, of course, can hand out citizenship. And if that were the case, I guess we'd say, okay, maybe we can. But what you're saying is in the absence of such a statute that courts don't have that inherent power, and that's what Pangolinan stands for. Is that what I'm hearing you say? That's how you're weaving together legislative developments and equitable powers? You're basically saying there's no equitable power. Courts might be able to do it as a matter of law if there was an affirmative grant of authority from Congress, but there isn't one, therefore they can't do it, period. Is that hard putting this together? No, Your Honor. I can see I'm finessing this poorly. The line in the sand that Pangolinan drew is a restriction on the inherent authority of a court's equitable authority. The fact that Congress removed from the courts the ability to confer citizenship and placed that and resided that in what is now the Department of Homeland Security simply bolsters that restriction. So whereas the courts back in 1987 possibly could have conferred citizenship, but nevertheless we learn the next year that they cannot through equitable authority. They have to do it in some other way. They can't use equitable authority. Now that inherent limitation on equitable authority remains, but by statute they can't even confer citizenship otherwise. And when you say by statute they can't do it otherwise, what are you relying on? Because you heard Mr. Day say, and we went back and forth on, what is it, 1503, and he says, yeah, it's just not the case that the district court case arose in or in connection with a removal proceeding or was an issue in a removal proceeding because the district court case preceded all that. So it's just the government is talking about stuff that's irrelevant to the district court case. Well, I believe it's Section 14. It's in the brief. I don't want to misstate, but in the brief we quote that statute because it's the word exclusive that's really operative there. And so the ability to confer citizenship now exclusively resides in the executive arm. So regardless, though, the focus on the statutory adjustments from 1988 is a subset. It is subordinate to the inherent limitation on equitable authority, which is a standing principle, true in 1988, true in 2024. And for that reason, this court has correctly pressed the opposing counsel because there is simply no inherent authority by which this court can rewrite history so that the immediate effect is to confer citizenship on Mr. Law in violation of the statutes, the citizenship statutes that he never complied with because the whole argument started with his consent. Although he really thought he did because the government told him he did. I mean, that's the thing that's challenging about this case, right? This is a circumstance where the government brought the guy in. The government said, you're good. The government gave him the forms to fill. I mean, if he'd filled out a different form, things might have been different. But the immigration official who was there working with him and his parents evidently, it's asserted, she chose the form. They filled it out. He gets a certificate. He goes on with his life. Leaving aside the stuff which I think Mr. Law quite rightly says, hey, we shouldn't be looking at this letter that shows up for the first time on appeal regarding the passport and the green card stuff. Those are things that weren't in front of the district court. If we're just looking at what was in front of the district court, it looks like here's a guy told he's a citizen, believes he's a citizen. He's operating under that belief for more than two decades. It's only after he's in trouble and there's no chance for him to rectify the problem, which it appears the government creates, is he put on notice, yeah, you were never a citizen ever. Now, is that, you know, maybe we will agree with you about what Pangilinan means, but doesn't that have sort of the cartoon stink lines coming off of it? Isn't that a terrible thing for the government to do to somebody? Doesn't that offend a sense of equity? Well, to the contrary, your honor, I think it's an astonishing proposal. Astonishing proposal that the government shouldn't do that to a person? No. No, that is, in the words of the Moose Danovich case out of the Ninth Circuit, that's lamentable that there is under any metric. Lamentable. You've got a gift for understatements. Thank you, your honor. I'll take that as a compliment. But the initial opening of your question, the proposition, the notion that whereas Rogers v. Belli and Schneiderman and Federico repeatedly emphasized the strict compliance required in order to receive citizenship, the notion that the government can somehow confer citizenship in violation of those same statutes by misadjudicating a process or making a mistake. I mean, an adjudicator says on Tuesday, I'm feeling angry, so everybody walks in my office, I'm going to give them a certificate of citizenship. They walk in and they walk out with certificates. I mean, the idea that those people are now citizens despite the fact that they can show no compliance, that as required by Belli and Federico, they can show no compliance with the underlying statutes. What you're seeing is a conflation of the reliance prong and an equitable estoppel claim with the strict compliance requirement on which Pangolinon is based and which precedes and is necessary. It's to me like you're conflating the legal status with the equitable issues. They quite rightly abandon it. They acknowledge they can't make this work under existing statutory law. Their only route forward is the equitable one. My good colleague here, Judge Phipps, has cited unclean hands and related doctrines as a reason why, you know, maybe equity wouldn't get involved. But let's assume for the sake of argument that we thought, well, maybe equity's got some place here. The government doesn't even seem to fight the notion that there was a misrepresentation, that you are a citizen was not true, and that's misrepresenting, right? We assume that for purposes of the analysis. All right. Don't assume it. Defend it. Is it not a misrepresentation? How can you stand there and say that wasn't a misrepresentation? They told him he was a citizen, and now your legal position is he isn't and he never was. So one thing's true and one thing isn't. The government misrepresented, right? It's not even an assumption. It's just like straight up inaccurate, not true, correct? For someone who then applied for a replacement green card, within- Not before. Just answer the question I'm putting to you. Okay. Okay. So we got prong one. That's done. Prong two, you're fighting about the reliance point on this, but none of that was in front of the district court, so let's just say we were inclined to say, okay, that's not something we can take account of because the government chose not to put that in front of the district court, so that that's not an issue that is in front of us, and a person who is told they're a citizen ought to be able to rely on it, shouldn't they? Shouldn't a person be able to trust what the U.S. government says in an official certificate? You are a citizen. I'm handing you this thing. Congratulations. Let's have a party. They ought to be able to rely on that, shouldn't they? It's reasonable to rely on that, isn't it? I don't see how that matters, Your Honor. Well, it matters because it's pronged through the equitable estoppel test. No, it doesn't matter for a larger reason, and the reason is this. The agency exercised its authority under Section 342 of the INA, so if you look at A123 and 4- Just walk with me through this. Okay, but that's just cancellation, though, which by statute affects only the document. Mr. Buchanan, just walk with me through this. There's four prongs. The first prong is met. The second prong seems to me is also met because a person could reasonably rely on what the government tells them, couldn't they? Yeah. Based on this record. If he gets a certificate, he can rely on that certificate, and he did. He relied for a passport. Based on this record. Yes. The third thing is to his detriment. You'd have to acknowledge that if he'd known there was a problem with it, he could have done something with that before he got himself into trouble with the law, so the fact that he didn't know and he was relying ends up being detrimental to him, does it not? I disagree. You don't think he's got a detriment for not having known for 21 years until after he was foolish enough, stupid enough to go deal drugs? You don't think that's a detriment to him? Your question skips over several undisputed facts, and to use the verbiage below from the district court, that account for him applying for a replacement green card because the agency issued that in error, only months after receiving his certificate. So that's prong two. Now you're fighting prong two. You're saying he didn't reasonably rely, and we know we didn't reasonably rely. Your opponent says we can't really get to prong two at this stage anyway. So the answer is if you didn't, we're taking, at least at this stage, your opponent's allegations as prong two, and it seems that, you know, no matter what, there might be problems down the line with prong two, but I think the scope of the concession that you might consider making is just that at this stage of the proceedings, we haven't disputed prong two and then leave open later what constitutes reasonableness under the circumstances of a person who took an oath after age 18, who knew his parents weren't probably naturalized in 1991. He probably would have known that. But at this stage of the proceedings, I mean, keep it open later. We can talk about what's reasonable and what's not, but I guess what we're trying to do is we're trying to isolate what's at issue of these four equitable prongs right now. It doesn't appear that misrepresentation is at issue right now. It doesn't appear that reasonable reliance can be disputed right now on the pleadings as we've got them. I'll turn it back over to Judge Shorten. Yeah, I think you're walking through them. Yeah, and I'm having a tough time with the detriment thing, too, because it seems like you want to fight about reasonable reliance, but you have it. Let's put it this way. As I read your brief, it looked to me like you gave away the first three, and maybe you gave them away because you had to because of what Judge Phipps said. We're at the motion to dismiss stage, and everything in the complaint has to be accepted as true and all reasonable inferences drawn therefrom. And based on that, it certainly looks like there was a government misrepresentation. He reasonably relied on it. He did so to his detriment. So we're down to affirmative misconduct. That's the battle. That's where you fought your fight, right? No? Well, I think that he can't meet his burden for prongs two, three, or four. But let me suggest approaching this a different way because this is unusual procedurally in that you have a petition for review of removal order where the citizenship issue was raised, as well as the estoppel claim. And then you also have the appeal of a district court. And we're dealing with the district court one right now. Okay, but. So don't put them together. Okay, so here's how we put it together. Section 1252 B-5 subsection C requires that the citizenship claim, once it's raised in the petition for review, shall be, I believe the verb is, shall be decided only under this subparagraph. In other words. So that's the immigration. That's the removal proceeding. That's the immigration proceeding. Wait, is your legal argument here to us today that once the government chooses to bring the removal proceeding, it doesn't make any difference what was happening in a district court proceeding where the federal rules of civil procedure are in place and Rule 12B-6 is operative and we're to take the complaint on its face as true and draw reasonable inferences? Is that your argument? Immigration proceeding that the government brings swamps the earlier district court proceeding that the petitioner brought. It doesn't nullify it. It just simply prioritizes it. So just like 1503A-1 and 2 prioritize removal proceedings over declaratory judgments, so too in 1252. And that person was removed. He's removed. Right. But he got what you wanted. So now we're looking at the district court case. And I thought, and I could be wrong, that in fighting the district court case, you didn't have anything to fight on and didn't fight on 1, 2, and 3 of the four prongs. You fought on 1 ground, and that was affirmative misconduct. But if I'm wrong about that, you should tell me and you should point me to the briefing to where you said, well, wait a second, consistent with Rule 12B-6 and what we're obligated to do and you, the court, are obligated to do under your standard of review at a motion to dismiss stage, we can rightly say 1, 2, or 3 are rightly an issue. I'm out of time here. I would like me to respond. Give it your best shot. Thank you, sir. And you would have to do this without referring to the passport letter because that's not in the complaint. And you'd have to do it without referring to the green card because that's not in the complaint. We're obligated to deal with 12B-6. That's what I'm talking about. That's what I'm asking you about. Okay, well, prongs 2, 3, and 4. So I suspect that the most succinct response is that as to prong 3, reliance, petitioner's criminal transcript definitively precludes any determination. It's not in the complaint, but it is judicially noticeable. It's produced by a source whose authenticity cannot reasonably be questioned, and it may be taken on, it may be judicially noticed at any stage of the proceedings, including on appeal. As to prong 2, so affirmative misconduct, we didn't dispute in the brief. I think we've got your argument. Let me ask my colleagues if they've got anything. Okay. Thank you, Mr. Buchanan. We've got two minutes to rebuttal for Mr. Day. Thank you, Your Honor. Thank you. Trying to figure out where to begin. Okay. I have a question for you. Oh, yes, please. The clock. I thought that you were asking us to take us back in time, to take Mr. Lau back in time to the period between 1991 and 2006 when he could have applied for citizenship. I guess it wasn't, so maybe 1995 when he had been in the country as a lawful permanent resident for five years and could have demonstrated, at least in theory, good moral character, could have applied for naturalized citizenship up until the time of his conviction and return us to that point because he had relied in his detriment upon the certificate of citizenship. But instead, it sounds like you're asking us to actually sort of declare that he is a citizen. So can you clarify that for me? Sure. I think to put it simply, this court has held in published opinion, Delmore v. Brownwell, that when the government tells you you're a citizen, and in Delmore that was just a letter from the Commissioner of Immigration, when the government tells you you're a citizen, you are entitled to that status absent a showing of clear and convincing evidence. And so what I'm saying is equitable, and that is the basis of equitable estoppel right there, in Sconstantin procedural deposition. But I thought we had already agreed that the evidence shows that he wasn't conferred citizenship before age 18. It was not possible in July 1991 to make him a citizen. So if we were to go back and allow evidence to be put on the record, then the evidence would be there to show he was not a citizen. Yeah. So the question is simple. So the estoppel point isn't just a procedural point. The point is that, and so this is what INSV Hibby was confronting. This is what USV Moser is confronting. The question when it comes to equitable estoppel becomes, okay, if the government tells you that you are a citizen and you rely on that to your detriment and then you lose citizenship and then you find out, in this case, 21 years later that that reliance was foolhardy, the government should be stopped from undoing the damage that it did from that status. One thing to just say about – yeah, go ahead. So just to put a fine point on it, it's not just there should be a stop from saying you're not a citizen. They have to say you are a citizen. The equitable relief at the end of the day you want is for us to say he's a citizen. Right? That's it. Well, he's seeking a declaration to that effect. I mean, we are in the land of equity, and so I wouldn't – so the question of what the ultimate equitable remedy is is open-ended, I would say. The one thing to just say about equity in general post-Pangolinan is that it's just not – I mean, it is a feature of immigration law, including both the Second, the Fifth, and the Ninth Circuit precedent and this Court's precedent. Even when it's looking at equitable estoppel, right, the Court has never explicitly said that equitable estoppel can never apply in immigration context. Well, I'll just quote you Pangolinan one more time just so I can foul the word up one more time. Neither by application of the doctrine of estoppel nor by indication of equitable powers nor by any other means does a court have the power to confer citizenship in violation of these limitations. And those limitations are the Immigration and Nationality Act that we've been talking about. Right. I think – and again, I think that has to be viewed in terms of the equitable relief that was being sought by the petitioners in that case, which was simply we didn't apply, we didn't satisfy the statutes. Nevertheless, decades later, please declare us to be citizens. And no matter what the immigration issue is, whether it be LPR status, religious immigration status, and even in citizenship cases, this Court has never said that Pangolinan stands for the proposition that in specific cases where the government makes a mistake that's so grievous as this one, that we can never see equitable estoppel apply. To the contrary, we see the opposite. Is what I'm hearing you say that we should read Pangolinan is saying it asked for a lot of equitable relief. And so when we read Pangolin, we can say it stands for the proposition that courts can't give that much equitable relief. Now, in this case, I guess you're saying the degree of equitable relief that you want, your client wants, isn't quite as big as in Pangolin. And so therefore, what we should do is say, hey, we can't – that was when you wanted a mile of equitable relief. Here we only want a quarter mile of equitable relief. And so we can't read the case that says you can't get a mile of equitable relief to stand for the proposition that you can't get a quarter mile, to just give it some metric. I would agree with that. The only distinction I would draw is it's not just a matter of quantity. It's also quality. So I would point this Court to Chiruku, which is a case in the government's brief. Chiruku was a case in which an individual came to the country and was seeking an adjustment to the LPR status but was granted advanced parole, which meant that they could stay in the country while – even though technically it violated the statute while the application was pending. The government told this person that if you travel outside the country, okay, you will – that will – you won't be able to get LPR status. And she traveled outside the country. The country – the Court evaluated two types of equitable relief. The kind of thing that was being sought in the Pangolinan case, however you say it, and from equitable estoppel. And the equitable – both arguments were held together, you know, except but distinguished. And so the Court said there's no equitable estoppel argument here because the government just did as it was told. Here, this Court has said that when the government says something affirmatively, it should be held to it. And, yeah, and that's it. Gotcha. Thank you, Mr. Day, and thank you, Mr. Buchanan. We have the case under advisement, and we'll render a decision in due course. We'll go ahead and call the next case.